STATE OF VERMONT *v.* MAHLON J. GRAVELLE.

(89 A2d 111)

February Term, 1952.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and CUSHING, JJ.

Opinion Filed May 6, 1952.

*C. O. Granai* for the respondent.

*Frederick G. Mehlman,* Deputy Attorney General, and *Richard E. Davis,* State's Attorney, for the state.

ADAMS, J. The respondent was tried by jury at the March Term 1951 of the Washington County Court on an indictment charging manslaughter for the killing of his wife, Jennie Gravelle. The verdict was guilty and the case is here on the respondent's exceptions.

The respondent and his wife with one Shute occupied a one room lumber camp in the Town of Woodbury in which they were living while the respondent and Shute were cutting pulp. On Saturday afternoon, January 13th, 1951, they all went to Hardwick. The respondent and Jennie returned to the camp that evening. They procured some wine in Hardwick, drank some there, took

some back to camp and drank more there. Both were heavy drinkers. Sunday morning they drank more wine, had an argument, scuffled and had a fight. They fell against the stove and broke it. The respondent testified that he sat Jennie so forcefully in a chair that it collapsed and broke. They spent the rest of the day in bed and were in bed when Shute returned to the camp that afternoon. Shute saw the broken stove and patched it. Jennie stayed in bed most of the day Monday. Tuesday she was very sick. She grew progressively worse and on Friday morning, January 19th, she was taken to Hardwick to the home of the respondent's father and a doctor called. He saw her at various times until she died on Saturday night, January 20th. The state pathologist performed an autopsy. It disclosed approximately 65 bruises on the surface of much of her body. Some of these were superficial. About ten percent were fairly deep, some as much as three quarters of an inch. She had had heart trouble for a considerable number of years. The autopsy showed a heart between two and three times its normal size and which had been damaged by rheumatic fever many years previously. The condition directly leading to death was "calcific aortic stenosis."

The state claimed and its evidence tended to show that the injuries and bruises on Jennie's body were inflicted by the respondent and contributed proximately to her death. The respondent claimed and his evidence tended to show that all he did was to defend himself and that the injuries and bruises were not a contributing cause of death.

Exception 1. Four photographs of the interior of the camp were offered by the state. They were taken by an officer of the State Police during the evening of January 22nd, two days after Jennie's death and were taken from different positions. No one of them showed the entire interior of the camp or all of the objects therein. The officer who took them testified and identified the part of the camp each photograph represented and that the four together accurately and faithfully represented the appearance of the inside of the camp as he saw it. They were then shown the witness Shute. He testified that one showed the bed in which the respondent and Jennie were lying when he entered the camp on Sunday afternoon; another showed the heating stove that he found broken and which he fixed; another showed his bed, the heating stove, kitchen table

and also a broken chair lying on the floor that he didn't see on Sunday; that the other showed the cook stove and a chair with a coat on it. He then testified that the camp as shown in the photographs looked the same and the various objects shown in them were in the same position as on Sunday afternoon, except for the broken chair on the floor which was not there then and a steel foot locker with a big snap lock on it that was located beside the bed where the respondent slept but was not there in the photograph of that part of the camp.

The photographs were then offered by the state in connection with the witness' testimony. They were received over the objection and exception of the respondent. The objection was that it was apparent from the photographs and the testimony of the witness that the objects or several of the objects in each of the pictures were placed or posed by someone and that it was apparently a posed condition, artificially created by the photographer. There was the further objection that there was no evidence to connect the pictures with anyone who knew about the condition of the camp at the time they were taken.

█ Models, maps, plans and photographs belong, in the law of evidence, to the same class, and are admissible only when properly verified. That is to say, preliminary evidence is required to show that they are sufficiently accurate to be helpful to the jury. But this preliminary evidence is addressed to the court,—the preliminary question of the sufficiency of the verification, though a question of fact, is for the determination of the court and is not ordinarily reviewable. *Hassam* v. *Safford Lumber Co.,* 82 Vt 444, 449, 74 A 197. The whole question of the admissibility of photographs is one largely in the discretion of the trial court and the rulings thereon are not ordinarily reviewable. *Leland* v. *Leonard,* 95 Vt 36, 38, 112 A 198; *Goulette's Admr.* v. *Grand Trunk Ry. Co.,* 93 Vt 266, 271, 107 A 118; *Hutchinson* v. *Knowles,* 108 Vt 195, 204, 184 A 705; *State* v. *Frotten,* 114 Vt 410, 417, 46 A2d 921.

█ Changes in the premises between the time of the occurrence and the time of the taking of photographs do not necessarily operate to exclude the latter. Changes in the conditions are open to explanation. *Aldrich* v. *Boston & Maine Railroad,* 91 Vt 379, 384, 100 A 765; *Dent, Admr.* v. *Bellows Falls & Saxtons River St. Ry. Co.,* 95 Vt 523, 533, 116 A 83; *State* v. *Longe,* 96 Vt 7, 9, 116 A 81.

Under the offer here and as received in connection with the witness' testimony, the photographs were not independent evidence but merely to aid the jury to a proper understanding of the testimony of the witness. *Hassam* v. *Safford Lumber Co., supra,* at 448; *Neill* v. *Ward,* 103 Vt 117, 159, 153 A 219.

As we have seen, the accuracy of the photographs was testified to by the officer who took them and the witness Shute testified about them as compared with the camp as he had occupied it with the respondent and his wife and when he returned to it and found them in bed on Sunday afternoon.

The respondent in his brief and on oral argument calls our attention to a broken chair on the floor shown in two of the photographs and a part of it shown on the table in two of them and to a coat on a chair with stains on it also shown in two of them. When the witness Shute was testifying in answer to a question on direct examination he mentioned the coat as not being on the chair on Sunday afternoon and at the request of the respondent the answer was struck. In his objection to the admission of the photographs the respondent did not call the attention of the trial court to any of the objects that he mentions here to substantiate his claim that the photographs were posed or the objects placed. He gave the court no information about his claim in that respect. He did not differentiate between any of the photographs. He did not call the court's attention to any testimony that any of the objects shown were placed or posed, nor does he now call our attention to any and we find none. The ground of his objection was entirely general.

It was incumbent upon the excepting party when he stated the ground of his objection to make it sufficiently explicit to apprise the trial court of the real point of it. *Grant* v. *Goodrich,* 109 Vt 462, 469, 199 A 246, and cases cited. In *Davis, Admr.* v. *Raymond,* 103 Vt 195, 199, 152 A 806, 808, in which testimony of an experiment to test visibility of certain objects was admitted and excepted to on the ground that the experiment was made at a different hour of the night and under entirely different circumstances and conditions than those existing at the time of the accident, this Court in holding the exception too general said, "It did not call the court's attention to a single particular wherein it was claimed the conditions were different." That is the situation here.

Moreover, the coat in question was introduced as an exhibit by

the state, without objection, as belonging to the respondent. There was testimony, without objection too, that the spots on it contained human blood. Also the broken chair in question with its broken parts was introduced as an exhibit by the respondent as having been found in the camp by the sheriff on the day after the photographs were taken and the respondent testified that it was the one in which he sat his wife so forcefully that it collapsed. This exception is not sustained.

█ Exception 2. During the direct examination of the State's witness, Dr. Densmore, he testified to his examination of Jennie on the morning of the 19th and seeing bruises on her chest, arms and forehead which he described as multiple bruises and that he did not examine the rest of her body. He then testified that the respondent explained how the bruises occurred, telling the witness that he (the respondent) and his wife were in the logging camp and that she had a severe nosebleed; that he was unable to stop it so went to the brook to get some cold water and while he was gone she fainted and fell against the stove and it toppled over on her and she was on the floor in a faint when he came back to the camp. The witness was then shown photographs of Jennie's body taken after her death which were taken to show the bruises and marks on her body and he identified a considerable number of them as the ones he had seen while she was alive. He was then asked to give his opinion as to what could have caused the bruises that he observed. Subject to an objection and exception that he (the witness) didn't make an examination of the bruises, just looked at them, and the examination was not more extensive, he stated, "Any blunt instrument, I should say, it is hard to specify what did do it." The objection and exception is without merit. The question whether the witness was qualified from his examination of the bruises to give his opinion was a preliminary one for the court. The question whether a witness has had an adequate opportunity for observation, in circumstances calculated to result in an inference helpful to the jury, is largely one of administration and within the discretion of the trial court. *In Re Moxley's Will,* 103 Vt 100, 107, 152 A 713. There was no abuse of this discretion. Moreover, as we shall see later, Dr. Spellman, the state pathologist, testified to the same thing without objection. *Peoples National Bank* v. *Brunelle,* 101 Vt 42, 47, 140 A 160.

█ Exception 3. The same witness, Dr. Densmore, was then

asked if he had seen people who had been in fights and bruises that resulted therefrom. After testifying that he had, he was then asked how those bruises compared with the ones he observed on Mrs. Gravelle. Subject to the objection and exception that there was no evidence to show what happened to the other individual, that it would be collateral and impossible to compare the bruises as to what caused them or how they happened unless more evidence was shown, the witness answered, "Well, I should say they are similar, I can go that far." If there was error in admitting this testimony, which we do not decide, to be reversible, prejudice must affirmatively appear. Supreme Court rule 9; *State* v. *Fairbanks,* 101 Vt 30, 34, 139 A 918; *State* v. *Stacy,* 104 Vt 379, 396, 160 A 257, 747.

The sheriff was a witness for the state and testified that the respondent when he was first questioned told him that on the Sunday morning in question, he blacked out and couldn't remember what happened and that when he "came out of the fog" he laid down on the bed with Jennie and her head and face were all covered with blood and she said "Mahlon, you have hurt me awful." He further testified that later the respondent admitted that he did lick his wife. Dr. Spellman, the state pathologist, testified without objection that the injuries he observed on the body could have been produced by many blows either with a blunt instrument or such things as hands or feet and some of them were quite characteristic of having been inflicted during a fight of some sort. The respondent was a witness in his own behalf and testified that on that Sunday morning he and his wife drank some wine and had an argument; that he scuffled with her several times and was angry; that he sat her down in a chair so forcefully that it collapsed; that she had the nosebleed and that she had a slight cut on her head that was bleeding. The chair and its broken parts were introduced as an exhibit by the respondent. No prejudice appears. *State* v. *Pierce,* 88 Vt 277, 278, 92 A 218; *State* v. *Colby,* 98 Vt 96, 98, 126 A 510; *State* v. *Zielonko,* 101 Vt 105, 106, 141 A 596; *Healy, Admr.* v. *Moore,* 108 Vt 324, 334, 187 A 679; *Ackerman* v. *Kogut,* 117 Vt 40, 48, 84 A2d 131. The exception is not sustained.

Exception 4. During the argument of the State's Attorney, the respondent objected to the statement, referring to the respondent, "Did drink quite a bit on the 14th, in my honest opinion." When it was objected to, the State's Attorney said, "I won't press

it." The court then said it was legitimate argument and allowed the respondent an exception. The State's Attorney then continued, "I think the evidence, if you feel as I do from the evidence, shows that Mahlon drank to excess that day, on the 14th. I think that after he got into that state he didn't know what happened. That is what I think and I think that is shown from the evidence in the case." An exception to an argument must not only state the language objected to, but must also specifically state the ground of the objection, so that the court may know what it is to rule upon. *State v. Schoolcraft,* 110 Vt 393, 396, 8 A2d 682. Here, the respondent in making his objection or taking his exception to the argument gave no ground therefor. For this reason, if for no other, the exception is unavailing. However, if we give consideration to the ground briefed by the respondent that it "was used to give the defendant the lie" and that he "was incapable of any belief," the result is the same.

Immediately after the objection was made, the State's Attorney said he wouldn't press it and then followed by arguing that the evidence showed that the respondent drank to excess on the day in question. The evidence amply justified this argument. The respondent had testified that he was an alcoholic; that he was on the black list so he could not buy liquor himself but had to have somebody procure the wine for him; that he procured a quart of wine on Saturday afternoon, the 13th, and more that evening; that on Sunday he drank some wine when he got up; that he had some wine in a two quart jug on his side of the bed; that he believed he procured three half gallon jugs of wine; it might have been two or four; that his wife accused him of being drunk; that when the Labrees and Shute came to the camp that afternoon and found him and his wife in bed and saw the broken stove and asked about it, he told them he was drunk and fell into it. The Sheriff had testified that the respondent told him that he and Jennie drank wine after they got back to the camp Saturday night; that on Sunday morning he started drinking more wine; that sometime during the forenoon he blacked out; that he came to sometime in the afternoon; that he thought then he was lying on the cot in the corner, but wasn't sure; that he got up and staggered around and went over and laid down on the bed where Jennie was and that her head and face was all covered with blood.

The reported cases are replete with opinions that deal with

arguments of counsel that have been held proper and improper. It would serve no useful purpose to analyze them. The general rule is that the argument should be confined to the evidence in the case and to the inferences to be drawn from it and avoid appealing to the prejudice of the jury. *Duchaine* v. *Ray,* 110 Vt 313, 321, 6 A.2d 28.

In an argument to the jury it is improper to use language that is equivalent to an expression of the personal belief of the State's Attorney in the guilt of the respondent. *State* v. *Parker,* 104 Vt 494, 500, 162 A 696. We adopt with approval the language of the court in *People* v. *Hess,* 85 Mich 128, 48 NW 181, 183, "It is not proper for the prosecuting officer to tell the jury that he believes the defendant guilty, as his belief is not evidence in the case; but he has the right to argue from the testimony that the defendant is guilty, and to state to them what evidence before them convinces him, and should convince them, of such guilt. To deny to a prosecuting officer this privilege would be to deny him the right to place before the jury the logic of the testimony which leads his mind to the inevitable conclusion of guilt, and which he has the right to presume will lead them to the same conclusion."

Whether an improper argument is of such a nature as to require a reversal depends upon the attending circumstances and there is little profit in comparing one case with another; and assuming the impropriety, prejudice must affirmatively appear if the exception is to be sustained. *State* v. *Frotten,* 115 Vt 146, 147, 53 A.2d 52. We do not think, in view of what transpired afterwards, that the jury could have been prejudiced by the single expression used by the State's Attorney that was objected to. It seems clear from what followed in his argument that he was only attempting to argue what the evidence showed and proper inferences therefrom. The exception is not sustained.

Exception 5. During the cross-examination of Dr. Spellman, the state pathologist, the examiner asked him, that assuming a person had a heart condition such as the deceased and had engaged in a tussle and received the injuries that the doctor had testified about, if death should come within a short or long period of time thereafter. The doctor gave a qualified answer. A question was then asked that did not give the doctor's previous answer correctly. It was objected to on that ground and excluded. Another

was then asked that attempted to include the answer to the previous question but in somewhat different language. It was objected to, excluded and an exception allowed. The respondent's brief states his contention that the .question would have been answered to his advantage and his rights were prejudiced by the failure to get an answer. The contention is not supported by argument or citation of authorities. This is inadequate briefing and merits no consideration. *Johnson* v. *Moore,* 109 Vt 282, 288, 196 A 246. However, the previous answer of the doctor had covered the same ground and nothing appears to show an abuse of the court's discretionary power to supervise the scope and extent of the cross-examination. *State* v. *Williams,* 94 Vt 423, 434, 111 A 701; *Holton Estate* v. *Ellis,* 114 Vt 471, 481, 49 A2d 210, and cases cited. This exception is not sustained.

Exception 6. Dr. Beecher was a witness for the respondent. During his direct examination, he was asked a question that called for his opinion. The question assumed the fact that Jennie's medical history was as had been repeated in court and then asked whether the scuffle had any bearing on her death. The question did not assume that the doctor had been present in court and heard her medical history repeated there or had heard the testimony about the scuffle. In fact the record shows that the doctor had not been present the entire forenoon while the respondent had been testifying about the events in the camp between him and Jennie on Sunday morning. It also shows that much of the history as testified to by those doctors had been so testified to previous to that forenoon. Nowhere did it appear that the doctor had been present and heard any of that testimony. For these reasons, if for no other, the question was properly excluded. V. S. 47, § 1748. Moreover, his opinion as to the same matter in reply to a hypothetical question was received later, so the respondent had the substantial benefit of the excluded testimony. For this reason, also, an exception is unavailing. *Perkins* v. *Vermont Hydro-Electric Corp.,* 106 Vt 367, 408-409, 177 A 631.

*Exceptions overruled and judgment affirmed. Let execution be done.*