### State of Vermont v. Anthony Persuitti

[339 A.2d 750]

No. 134-73

Present: Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.

Opinion Filed June 3, 1975

*Francis X. Murray, Esq.*, Chittenden County State's Attorney, Burlington, for Plaintiff.

*Richard C. Blum, Esq.*, Burlington, for Defendant.

**Larrow, J.** Respondent was convicted, by jury trial, of knowingly and purposely causing bodily injury to another with a deadly weapon, i.e. a piece of metal pipe, in violation of 13 V.S.A. § 1024(2). This offense is commonly termed aggravated assault. He appeals his conviction, arguing that the trial court should have directed in his favor on the charge of aggravated assault, submitting to the jury only the crime of simple assault, and that there were trial errors in the admission of evidence and in the instructions and argument to the jury. We consider these claims in that order.

Appellant, who did not testify, was convicted largely on the testimony of an accomplice, one Derouchie, with circumstantial corroboration. Considering respondent's motion for directed verdict, we view the evidence in the light most favor-

able to the State, excluding the effect of modifying evidence. *State* v. *Guppy*, 129 Vt. 591, 285 A.2d 717 (1971). So viewed, it shows that respondent, Derouchie, one Hamlin, and another known as "Bow" went to West Bolton, Vt., on September 28, 1972, to burglarize the home of a Mrs. Mondella, whose husband reputedly kept large sums of money in the house. The plan was formulated in advance. The party carried three loaded handguns, a length of pipe, masks, tape, gloves and a flashlight. The plan was to use whatever force was necessary to subdue Mrs. Mondella, including "hitting her, knocking her out, or whatever." They planned to tie and gag her while searching for the money.

At the scene "Bow" (Bolduc) gained entry to the house, with the metal pipe but without his gun. Respondent and Derouchie remained just outside, armed. Mrs. Mondella put up much more resistance than was anticipated, and was severely beaten by Bolduc, with various instruments, including several heavy blows with the pipe. The beating was accompanied by threats to kill. Mrs. Mondella finally managed to escape, while Bolduc was opening the rear door. Derouchie fled on hearing the screams inside the house, as at some time did the respondent. Some distance down the road he sustained a bad fall, and was discovered by a passerby, who notified the state police of an injured man. The passerby did not know of the burglary, and at first the trooper who responded did not connect respondent with it. Statements were made by respondent to the passerby and to the trooper, discussed later in the opinion.

■ Respondent's first claim of error is the denial of his timely motion for directed verdict on the charge of aggravated assault. Simply put, his contention is that there was insufficient evidence for a finding of the required specific intent, and that he could be held only for simple assault. He cites *State* v. *Taylor*, 70 Vt. 1, 39 A. 447 (1896), as holding that aggravated assault cannot be found unless the plan developed by the respondent and his companions included the use of aggravated force. We agree that *Taylor* so holds, as does *State* v. *Orlandi*, 106 Vt. 165, 170 A. 908 (1934). The argument is that the force used went beyond his contemplation, and that when the beating occurred he not only did not participate, but fled the scene. This argument has some force when addressed to the triers of

fact, but it cannot prevail here. The jury might have been justified in so finding, but they were also justified in finding, as they evidently did, that the heavily armed expedition, planned in advance, contemplated the use of whatever force the situation called for. The factual situation which the jury could find, on the evidence, in our judgment falls squarely within the rules laid down in *Taylor, supra,* 70 Vt. at 11:

> We think the jury could not be permitted to return a verdict of guilty of an assault with intent to murder against all, on the mere finding of a common purpose to resist arrest. It would doubtless be different if it were found that they acted upon a common understanding that they would do whatever might be necessary to avoid arrest.

In this case, the State's evidence supports such a finding, that there was a common understanding to use whatever force was called for. Three guns and a metal pipe do not bespeak gentle persuasion; they do circumstantially corroborate Derouchie's description of the intent of the participants. The motion for directed verdict was properly denied.

Appellant also argues that the trial court erred in permitting expert testimony by a chemist-toxicologist on the subject of comparison of a hair sample taken from the respondent with a hair specimen found in one of the masks discovered near the scene. The argument is that his qualifications were largely in chemistry, and that the comparisons he made were not chemical comparisons, but physical examinations. We cannot conclude from an examination of the record that the trial court was clearly wrong in its ruling. *State* v. *Bessette,* 130 Vt. 438, 296 A.2d 179 (1972), involved a very similar question, and we there held the ruling must be affirmed. Moreover, his eventual testimony was only to the effect that his examination was inconclusive, so that error is not made to appear.

The appellant urges as one of his main reasons for reversal the admission into evidence, over objection, of statements made by him during police interrogation, without his being fully advised of his rights under *Miranda* v. *Arizona,* 384 U.S. 436 (1966). The State concedes that the purported

*Miranda* warning given to him was incomplete, in that it failed to advise him an attorney would be provided for him if he could not afford one. The statements were not inculpatory, but exculpatory; their damage to the respondent lay not in their content, but in their demonstrated falsity, an arguably implied admission of guilt. Respondent stated that he had been hitchhiking to Burlington, and got off in the Bolton area. He had made the same answers to questions by another witness at the scene of the fall in which he was injured and before he became a suspect in the crime at the Mondella residence. To this questioning, of course, the requirements of *Miranda* were not applicable. *State* v. *Meunier,* 126 Vt. 176, 224 A.2d 922 (1966). But to the answers given after he became a suspect and was under custodial interrogation *Miranda* is applicable, whether the statements are inculpatory or exculpatory. There admission was error and the State concedes as much, but argues that it was harmless under *Chapman* v. *California,* 386 U.S. 18 (1967).

We would point out at the outset that the handling of this question by the trial court was far from commendable. When the statements were originally offered, the court, as mandated by *State* v. *Rocheleau,* 131 Vt. 563, 313 A.2d 33 (1973), held a preliminary inquiry out of hearing of the jury. He made no findings, the better procedure indicated by our cases. *State* v. *Harbaugh,* 132 Vt. 569, 326 A.2d 821 (1974). In fairness, trial below preceded both *Rocheleau* and *Harbaugh.* But the statements were admitted solely on representation that later testimony would show that the appropriate *Miranda* warning had been given, at a prior time and by another officer. When the later testimony, taken before the jury, indicated a deficiency in the warning, a motion to suppress was denied on the ground that the respondent "could have hired a lawyer if he wanted one." And, the question of the voluntariness of the statements as given was not submitted to the jury under appropriate instruction. The procedure does not indicate even token compliance with the mandate of *Jackson* v. *Denno,* 378 U.S. 368 (1964). If the admitted statements cannot be held beyond reasonable doubt to be without adverse effect on the accused, reversal must be automatic, because respondent's constitutional rights have been infringed. *Chapman* v. *California, supra; Harrington* v. *California,* 395 U.S. 250 (1969).

As *Harrington* points out, the determination of possible adverse effect must be made on the basis of the record in each individual case, searching out the probable impact on the minds of the average jury. These are at best troubled waters upon which to embark, particularly for judges whose occupation has excluded them from being jury members at all, much less average ones. There is a natural reluctance to hold that improperly admitted evidence has not influenced a jury, especially when the procedural safeguards as to its admission have been so lightly treated. But we incline, like the majority in *Chapman,* to hold that on the record this is such a case.

We base our conclusion that the error was harmless on several factors. The first is that identical statements to the ones here in question, made only shortly before, were properly admitted and were for jury consideration, whatever probative value as an implied admission their demonstrated falsity may have had. The second is that the whole theory of the defense, and its argument, was one of admitting the respondent's presence and participation, but urging that the requisite specific intent for aggravated assault had not been established. As to this disputed element, the controverted evidence had no probative value whatever. In *Harrington* the learned dissent carefully points out that there might well have been concurrence had the illegally admitted statements of codefendants gone only to the respondent's presence at the scene, to which he himself had confessed, rather than to his active participation, which he denied. As stated by Mr. Justice Brennan in dissent, *Harrington, supra,* 395 U.S. at 256:

> The focus of appellate inquiry should be on the character and quality of the tainted evidence as it relates to the untainted evidence and not just on the amount of untainted evidence.

A third factor in our conclusion, based upon examination of the record, is the fact that the controverted statements, either those which were admissible or those which were not, were never argued to the jury, no charge was requested as to them, and none was given. The posture of the case below was the presence or absence of specific intent. Defense counsel argued:

> I am not asking you to approve of my client. I am not asking you to say he is not guilty of something. I am not asking you to say he should not be charged for anything . . . .

And again:

> There is one essential element that is the crux of this case. That is the specific intent of my client, Mr. Persuitti, not the specific intent of Bow, the guy who went into that house and inflicted the beating. What was the specific intent of my client?

The circumstances in this case are peculiar ones. But, while we are not disposed to enlarge in any respect the guidelines of *Harrington*, we do feel that the instant case is well within those lines, and that the admitted statements, repetitive, of doubtful probative value at best, and without bearing on the only issue actively controverted, were harmless beyond a reasonable doubt. In the language of the *Harrington* minority, we feel that the character and quality of the tainted evidence is without effect on the untainted evidence on which respondent was convicted. Error was committed, and we do not condone it. But we are convinced, on this particular record, that reversal is not indicated. The very peculiar circumstances here involved justify a result we will seldom be constrained to reach.

Appellant urges that the trial court erred in two matters of substance in its instructions to the jury. He claims that the issue of whether or not the pipe used in the assault was a deadly weapon was withdrawn from jury consideration by a charge that it was a deadly weapon as a matter of law, and that, in its supplemental charge, the court withdrew from consideration the possibility of conviction for simple, rather than aggravated, assault. We do not agree.

Both parties concede what is, of course, established law, that we must view the charge as a whole rather than piecemeal. *State* v. *Bishop*, 128 Vt. 221, 260 A.2d 393 (1969). Respondent concedes that a deadly weapon was correctly defined in the original charge and the determination of that issue left to the jury. There was no objection or exception to that portion of the principal charge. His claim, however, is that the

issue was beclouded when the jury returned to request instructions with respect to the difference between simple and aggravated assault.

■ The supplemental instructions were not, we agree, completely lucid. But they substantially conveyed that intentional assault with a deadly weapon was aggravated assault, while if the assault were only negligent, it was simple. And, when respondent's attorney requested a reiteration of the "Taylor rule" (requiring a common understanding to use any necessary force, as partially outlined *supra*) the court complied. Although the supplemental instructions were interspersed with bench conferences, no exceptions were taken at their conclusion, so that any interim objections to their content are to be considered waived. *State* v. *Stone*, 124 Vt. 215, 201 A.2d 703 (1964); *State* v. *Morrill*, 127 Vt. 506, 253 A.2d 142 (1969). As to the claimed withdrawal from consideration of the factual issue as to whether the pipe was a deadly weapon, we are pointed to no specific language in the supplemental charge which would effect such withdrawal. A colloquy at the bench did indeed indicate that the court entertained this view, but it was not conveyed to the jury. The supplemental charge was silent on this aspect of the case. And, as we have indicated, it was correctly charged in the original instructions. Failure to recharge it was not excepted to. *State* v. *Stone, supra,* requires affirmance on this point, particularly in light of the vivid testimony of the injuries inflicted. If the jurors credited the attack at all, it is difficult to conceive how they could have found the weapon used to be anything other than deadly.

Respondent's last assignment of error borders on the frivolous. In argument, the State twice argued that the respondent had been tapping at the rear door of the Mondella residence, trying to get in. The evidence sustains the inference. Mrs. Mondella testified to the tapping; Derouchie testified that he himself fled, and was not sure when respondent did; they were the only two immediately outside the house. Moreover, the argument was not objected to. Error does not appear. *State* v. *Gravelle,* 117 Vt. 238, 89 A.2d 111 (1952).

*Judgment affirmed.*