DOOLEY, J., dissenting.
¶ 19. Even without the charge involved in this appeal, defendant in this case is charged with very serious crimes and, if convicted, is likely to face a very heavy incarcerative sentence. It is not even clear that the sentence would be longer if defendant is convicted of the charge that the majority has reinstated. Thus, this dissent is not prompted by this defendant's circumstances. Instead, my concern is that the Court is stretching the requirements for accomplice liability beyond the clearly established and settled limits, and in future cases, will sweep in persons whose *500 conduct does not warrant the consequences that defendant in this case faces. For this reason, I dissent.
¶ 20. Accomplice liability is meant to punish defendants, who intend to, and in fact do, aid in the commission of the charged offense by the primary perpetrator. To support the felony-murder charge in this case, the State must prove that defendant acted with the same intent as required for his accomplice who committed the murder-that he intended to kill or at least knew his actions would cause great bodily harm or death. The facts simply do not support this mental element requirement. Defendant agreed to rob the victim, but did not agree that she be harmed and, consistent with his agreement with respect to the victim, understood that any guns present during the robbery were not to be loaded. Further, defendant did not actually harm the victim and was not present when she was killed. Given these uncontested facts, the State has failed to provide evidence sufficient to demonstrate beyond a reasonable doubt that defendant had the requisite intent.
¶ 21. Felony murder in Vermont requires a showing of intent to commit the felony and to kill. "The mere fact that a defendant's conduct makes him an accomplice to the commission of the underlying felony does not necessarily show that he is also an accomplice to the felony murder." State v. Bacon, 163 Vt. 279, 292, 658 A.2d 54, 63 (1995). To convict defendant of being an accomplice to felony murder, the State must demonstrate that defendant had both the intent to commit the felony and the mental state required for felony murder-at a minimum, an extreme indifference to the value of human life. Id. Further, accomplice liability cannot be used to convict a participant to a crime "who never intended a co-felon to commit the acts in fact committed." Id. at 290, 658 A.2d at 62. Therefore, in response to the motion to dismiss, the State was required to demonstrate "substantial, admissible evidence" to "fairly and reasonably" show, V.R.Cr.P. 12(d)(2), 29(a), that defendant acted at least with a "wanton disregard of the likelihood that death or great bodily harm would result." Id. at 291, 658 A.2d at 63.
¶ 22. The facts presented were as follows. Defendant and two other individuals agreed to burglarize a home. The plan was to obtain money and pills, but not to harm the victim. They waited until late when the victim would be asleep. They agreed to bring guns, but not to have them loaded. They knew where a key was located so they could enter silently. They wore gloves, and one accomplice wore a mask. When defendant entered the home, he did not know the victim was awake or that one of his accomplices had a loaded gun in violation of their agreement. Defendant entered the kitchen and observed that one accomplice had the victim on her knees and was holding a gun to her head, but at the time he believed the gun was not loaded. Defendant went upstairs to search and was not present when the victim was shot. After the victim was shot, the three cleaned up the crime scene, removed the body, and hid the body in the woods.
¶ 23. Viewing the evidence in the light most favorable to the State, the jury may have inferred that defendant intended to commit the underlying burglary, a felony, and was present in the home when the victim was shot, but the evidence does not fairly and reasonably show beyond a reasonable doubt that defendant acted with an intent to take the victim's life or in wanton disregard for the victim's life. See State v. Millette, 173 Vt. 596, 596, 795 A.2d 1182, 1183 (2002) (mem.) (stating that, in assessing motion to dismiss, question is "whether the evidence, taken in the light most favorable to the State, excluding modifying evidence, *501 would fairly and reasonably tend to show defendant committed the offense, beyond a reasonable doubt"). The evidence does not support the inference that defendant intended for the victim to be hurt, let alone killed. One codefendant explicitly testified that the intent was for the victim not to be harmed. In addition, the circumstantial evidence does not support an inference that defendant intended harm or should have reasonably expected that his actions would result in severe injury or death. See State v. Fanger, 164 Vt. 48, 53, 665 A.2d 36, 38 (1995) (explaining that because intent "is rarely proved by direct evidence," defendant's intent is shown based on circumstantial evidence (quotation omitted)). First, he agreed to enter the home with a key at a time when the victim would be asleep, indicating that the plan was not to have any contact with the victim. He agreed to take unloaded guns, and no other weapons, indicating a desire not to cause severe injury or death. And, defendant wore gloves, but no mask,[2] indicating that he did not want to leave fingerprints for detection from the robbery, but did not plan on having the victim see him.
¶ 24. The facts of this case contrast sharply with State v. Persuitti, 133 Vt. 354, 339 A.2d 750 (1975), in which this Court held that there was enough evidence of intent to survive a motion for acquittal for aggravated assault. In that case, the defendant and two accomplices planned a burglary, agreeing "to use whatever force was necessary to subdue [the victim]" and carrying loaded handguns, a length of pipe, masks, tape, gloves, and a flashlight. Id. at 356, 339 A.2d at 751. The defendant remained just outside while one accomplice entered the home and severely beat the victim. On appeal, the defendant claimed that there was insufficient evidence to demonstrate that he had the requisite specific intent for aggravated assault because "the force used went beyond his contemplation." Id. at 356, 339 A.2d at 752. This Court rejected the argument, explaining that the defendant had the requisite intent based on the plan created in advance and the heavily armed nature of the expedition. Id. at 357, 339 A.2d at 752. The uncontested facts in this case differ in several key ways-here, the plan was not to harm the victim, the guns were not loaded and there were no other weapons used, and no items were brought to tie up or restrain the victim.
¶ 25. The majority infers that defendant acted with a wanton disregard for the victim's life and knew that his conduct would cause death or great bodily harm foremost from the fact that defendant and his codefendants brought guns into the house for the robbery. Ante, ¶ 14. The majority relies on State v. Parker, 139 Vt. 179, 423 A.2d 851 (1980), for the proposition that a gun, regardless of whether it is loaded, is a dangerous weapon and from that infers that defendant acted with a murderous intent.
¶ 26. The majority's reliance on Parker is misplaced. Parker held that use of a gun, loaded or unloaded, supported an assault charge because it demonstrated intimidation of the victim, but Parker did not hold that the defendant's intent to harm could be inferred from use of an unloaded gun. In Parker, the defendant was convicted of assault and robbery with a dangerous weapon based on the evidence that the defendant pointed a gun at a bank clerk, but made no threatening gestures, and the *502 gun was unloaded. On appeal, the defendant argued that he was not armed with a dangerous weapon because the gun was unloaded, and therefore, use of an unloaded weapon showed he did not have intent to harm. This Court explained that this was not a specific intent crime and, as a result, the gun did not have relevance to intent. It concluded, however, that the gun was a "dangerous weapon" because it carried with it an implied threat of injury. Id. at 183, 423 A.2d at 853. In other words, the gun's use was relevant to demonstrate the intimidation element of the assault, but not as circumstantial evidence of the defendant's intent. See State v. Longley, 2007 VT 101, ¶ 11, 182 Vt. 452, 939 A.2d 1028 (holding that State need not prove that firearm loaded or operable to be "deadly weapon" for aggravated domestic assault because crime focused on victim's objective perception of danger not existence of imminent threat).
¶ 27. Here, the majority seeks to use the unloaded guns for a different purpose: to show that defendant knew his conduct would cause death or great bodily injury. The majority claims that using a weapon, even if unloaded, creates the potential for serious injury or death because there is a chance the weapon will provoke retaliation or there is a chance a weapon actually will be loaded.[3] This is exactly the element-scope creep that prompts this dissent. In essence, the majority is reasoning that defendant had the same intent as the killer, even though the facts are that he could not have had that intent if, as the facts showed, he believed the gun was unloaded as the killer agreed it would be. The teaching of Bacon is that defendant cannot be held responsible for the " 'unforeseen and unagreed-to results of another felon.' "
*503 Bacon, 163 Vt. at 292, 658 A.2d at 63 (quoting People v. Aaron, 409 Mich. 672, 299 N.W.2d 304, 327 (1980) ).
¶ 28. With respect to the possible retaliation, the difference between evidence showing an intent to kill and that demonstrating a risk of danger in general is precisely what separates second-degree murder from criminally negligent conduct. To show the intent required for second-degree murder, "the defendant must subjectively be aware of the deadly risk to the victim." State v. Brunell, 159 Vt. 1, 7, 615 A.2d 127, 131 (1992). " '[T]he degree of risk of death or serious bodily injury must be more than a mere unreasonable risk, more even than a high degree of risk.' " Id. at 8, 615 A.2d at 131 (quoting 2 W. LaFave & A. Scott, Substantive Criminal Law § 7.4, at 200 (1986) ). The risks of harm asserted by the majority are simply not high enough to equate risk of harm with an intent to kill.
¶ 29. I emphasize that the evidence must relate to the intent of defendant in particular. It is not the wantonness of the perpetrators as a whole that is at issue in this appeal; instead, it is the intent of defendant, and it cannot be based on the " 'unforeseen and unagreed-to results of another felon,' " as Bacon holds. 163 Vt. at 292, 658 A.2d at 63 (quoting Aaron, 299 N.W.2d at 327 ). The action of the killer was neither agreed-to nor foreseeable to defendant.
¶ 30. The majority also infers wantonness from the evidence about what happened after defendant and his accomplices entered the home. Our cases have not addressed the question of whether the intent to kill required for felony murder must be formed prior to the felony being committed. Comparisons to felony-murder cases from other jurisdictions are not particularly useful because "felony murder varies substantially throughout the country." 2 W. LaFave, Substantive Criminal Law § 14.5 (2d ed.) (explaining different ways that felony murder has been limited).[4] Michigan is most similar to Vermont, requiring an intent of "at least reckless disregard of a probability of grievous injury" to support felony murder. See G. Binder, Making the Best of Felony Murder, 91 B.U. L. Rev. 403, 440 (2011) (explaining that only Vermont and Michigan require both intent to commit underlying felony and intent to kill). In Michigan, the intent to kill may be formulated even after the felony begins. See People v. Carines, 460 Mich. 750, 597 N.W.2d 130, 137 (1999) (explaining that even if defendant did not have intent prior to beginning of robbery, inference from facts related to killing could support finding that defendant formed intent after felony began or "at the very least became aware of his cohort's intent during the events in question"); People v. Kelly, 423 Mich. 261, 378 N.W.2d 365, 373 (1985) (concluding that evidence supported that defendant either had intent prior to entering home, formed intent once inside house, or became aware of codefendant's intent at some point during proceeding).
¶ 31. Even accepting that defendant's intent could be formed after the felony began and defendant entered the home, there is no evidence to indicate that defendant formulated this intent once inside the house or even that he became aware of his codefendant's intent at some point. The majority relies on the fact that once inside the home defendant saw that his codefendant had the victim on her knees with the gun to her head. The majority asserts that this was a life-threatening situation and at this point defendant "was or should have been aware of the peril facing the victim." Ante, ¶ 17. The flaw in the logic is that there is no evidence to indicate that defendant knew the gun was loaded at that time. Without this critical piece of knowledge, the situation that defendant saw would not have created a danger in his mind.
¶ 32. Certainly, it would be appropriate for the jury to resolve any conflicting evidence regarding whether defendant agreed to use force or defendant knew the weapons were loaded, but here the uncontested evidence was that defendant agreed that no one was to be hurt and that loaded weapons were not to be used. Given the uncontested facts that defendant agreed that the robbery would be committed when the victim was sleeping, that she would not be harmed, and that unloaded guns would be used, the State lacks evidence to reasonably show that defendant acted with intent to kill or cause severe injury. Therefore, I believe the trial court properly dismissed *504 the felony murder charge and dissent.

The majority asserts that defendant's decision not to wear a mask indicates that he had intended to kill the victim if she saw him. Assuming this is a reasonable inference that could be drawn from the evidence, the mask-wearing on its own is not enough to demonstrate an intent to kill or inflict serious injury.

Certainly, where a deadly weapon is actually used in a crime, the jury may use this fact to infer malice. See State v. Haskins, 2016 VT 79, ¶ 42, 202 Vt. 461, 150 A.3d 202, cert. denied, --- U.S. ----, 137 S.Ct. 1375, 197 L.Ed.2d 557 (2017) (holding that "court did not err by charging the jury that it could, but was not required to, infer an intent to kill from the manner in which the deadly weapon was used"). In general, other states allow the jury to infer malice and intent "where the defendant has shot the victim with a firearm under circumstances not affording the defendant an excuse, justification or provocation." State ex rel. Corbin v. Haines, 218 W.Va. 315, 624 S.E.2d 752, 758 (2005). The jury may not, however, infer malice from the use of a weapon unless "the defendant did in fact use a deadly weapon." Id. at 759 (quotation omitted). Here, although defendant was involved in the felony, he did not actually use a deadly weapon during the commission of the felony.

In other jurisdictions, there is no additional intent element and therefore the mere fact of participation in a robbery, which resulted in a killing, would make an accomplice guilty of felony murder. See United States v. Carter, 445 F.2d 669, 672 (D.C. Cir. 1971) (holding that defendant who participated in robbery, which resulted in killing, was guilty of first-degree murder even though accomplice did actual shooting). This is true as long as the homicide has some causal connection with the felony; "the usual rule being that the death must be the foreseeable or natural result of the felony." 2 LaFave, supra, § 14.5.