BLANCHE, Judge.
In the matter entitled “Succession of Jack Alexander,” bearing No. 4513 on the docket of the Twenty-First Judicial District Court for the Parish of Tangipahoa, the same plaintiffs as here, collateral heirs of Jack Alexander, sought to have the last will and testament which was statutory in form declared null and void on the grounds that the said testator Jack Alexander, husband of Sarah Williams Alexander, could not read or write.[1] The trial court sustained a motion for summary judgment in favor of the defendant Sarah Williams Alexander on May 7, 1965, and the plaintiffs’ motion for an appeal thereafter was denied by the trial court on the grounds that the same was not timely filed. The plaintiffs applied to this Court for writs which we denied on November 3, 1965, stating:
“The judgment of the trial court was final prior to the filing of the notice of appeal.” [2]
Thereafter, the present action bearing No. 30,886 on the docket of the Twenty-First Judicial District Court for the Parish of Tangipahoa was filed on May 5, 1966, wherein plaintiffs alleged that the motion for summary judgment obtained by the defendant in the above proceeding was obtained by fraud and ill practices [3] and was therefore null and void.
To this action the defendant filed a peremptory exception of res judicata which was sustained by the trial judge and the plaintiffs appealed. This Court held that the prior action by the heirs to have the will declared nidi and void because the testator could not read or write was not res judicata as to the subsequent action to have the judgment annulled as fraudulently obtained.[4] In that decision this Court plainly stated that plaintiffs would be permitted to prove fraud. To make clearer the purpose of remanding the case to the trial court, we stated:
“ * * * plaintiffs are entitled to proceed to show that the affidavits complained of are false and upon this shozv-ing to the satisfaction of the trial judge, they may then proceed to a determination of the issue as to whether or not the testator, Jack Alexander, could neither read nor write. In the event plaintiffs are unable to show to the satisfaction of the trial judge that the said statements are false, then the exception of res judi-cata is well taken and should be sustained because the issue as to whether or not the testator could in fact read or write was determined and the issue became final with the rendition of the judgment that is herein attacked.” (196 So.2d 628, 630 — emphasis supplied)
After the case was remanded, evidence was taken at the conclusion of the trial, the trial judge rendered a judgment again maintaining the exception of res judicata filed by defendant, stating:
“This case has been reversed and remanded by the Court of Appeal, for the *345 limited purpose of determining whether the affidavits which were attached to the motion for summary judgment, namely those of A. J. Evans, Newman Briggs, and Guice Stafford were false and fraudulently obtained. The Court has heard the testimony and weighed it carefully and the Court is of the opinion that the evidence does not prove the falsity of the affidavits nor does it indicate any wise fraud in the inducement, or the con-fecting of the affidavits.” (Opinion of trial judge at 213 So.2d 86, 87)
The plaintiffs against appealed to this Court and we held that it was clear to us that the trial court and counsel had misinterpreted our instructions on remand and we again remanded the case to the trial court, Judge Reid dissenting. The majority stated that the trial court must afford plaintiffs the opportunity to prove first that Jack Alexander could neither read nor write and second that his wife knew he could not read or write, and from the proof of these two facts, a legal presumption would arise that the affidavits which resulted in the dismissal of plaintiffs’ action on the motion for summary judgment were obtained through the fraudulent practice of the defendant Sarah Williams Alexander:
“If, and in the event, plaintiffs herein sustain the burden of proving that Jack Alexander could not read nor write and that Sarah Williams Alexander knew Jack Alexander could not read nor write, then it follows as a legal presumption from the establishment of these two facts that the judgment of the court sustaining the motion for summary judgment, which resulted in the dismissal of the action entitled Succession of Jack Alexander v. Sarah Williams Alexander, No. 4513 on the docket of the Twenty-First Judicial District Court for the Parish of Tangipahoa, was obtained through the fraudulent practice of the defendant, Sarah Williams Alexander, and must be annulled and set aside. See LSA-C.C. Art. 1848.
“On the other hand, if the preponderance of the evidence supports the conclusion that Jack Alexander could read and write, it must be concluded that no fraud was practiced on the trial court in the above referred to matter, and accordingly the trial court should sustain the exception of res judicata filed in this action by the defendant and finally terminate this litigation.” Alexander v. Alexander, 213 So.2d 86, 87 (La.App. 1st Cir. 1968).
After the second remand, evidence was taken and at the conclusion of the trial, judgment was rendered in favor of the defendant dismissing plaintiffs’ suit. From that judgment the plaintiffs entered this appeal challenging the correctness of the trial court’s judgment.
While on appeal the defendant filed in this Court an exception of no cause and no right of action. This same exception was filed in the trial court; however, it was referred to the merits and no action was taken thereon. The exception alleges in effect that the falsity of the affidavits as a ground for setting aside the judgment of the trial court granting defendant a summary judgment was known to the plaintiffs even before the summary judgment was obtained and was also set forth by plaintiffs in their application for writs in Docket No. 6883,[5] and, therefore, said issue cannot be urged in a subsequent suit for nullity on the same grounds. Defendant cites LSA-C.C.P., art. 2005, which provides that a judgment of an appellate court may be annulled only when the ground for nullity did not appear in the record of appeal or was not considered by the appellate court. In other words, defendant contends that since plaintiffs knew of the falsity of the affidavits before the summary judgment was rendered, plaintiffs’ proper remedy was an appeal, which was not timely taken, and further, that the above-quoted provisions of Article 2005 require that plaintiffs’ appeal be dismissed since the grounds for nullity relied upon here appeared in a previous record of appeal.
*346 The exception must be overruled. The evidence that plaintiffs possessed prior to the rendition of the summary judgment that Jack Alexander could not read was not evidence that the affidavits used by defendant were obtained by fraud but was evidence that there existed a genuine issue as to a a material fact and that the motion for summary judgment perhaps should not have been granted. We believe that one could honestly be mistaken in the belief that another could read and write, and a determination that the affidavits that Jack Alexander could read were false and fraudulently given could only be made after all of the facts and circumstances surrounding the matter were considered. The evidence reflects that counsel for plaintiffs, after the motion for summary judgment was granted, did not initially attribute fraud to those who gave such statements but instead had misgivings about the correctness of his clients’ statements that Jack Alexander could not read.
Robert Palmer, counsel for plaintiffs, testified that after the trial judge had refused to allow the introduction of evidence which he had to the effect that Jack Alexander could not read, the defendant’s attorney showed him a record book of the church kept by Jack Alexander as a deacon in the church and was further told that Jack Alexander could read the Bible. At that time he stated that if he had known all of those things, he would have never brought the suit to set aside the will and thought that his clients were in error in asserting that Jack Alexander could not read. Thereafter, he became convinced that Jack Alexander could not read and suit was filed to set aside the judgment on the grounds that the affidavits on which that judgment was based were false and obtained by fraud and ill practice.
Assuming solely for the sake of argument that the provisions of LSA-C.C.P., art. 2005 relied upon by defendant are applicable here, the contention that the grounds for nullity appeared in a previous application for writs to this Court is likewise without merit. While it is true that the application stated that in the suit to annul the testament plaintiffs had affidavits that Jack Alexander could read, we do not interpret these allegations as constituting a “ground for nullity” that appeared in the record of appeal or that was ever considered by us.
On the merits we will first consider the evidence bearing on the issue of whether Jack Alexander could read and write. In our view the preponderance of the evidence is that he could sign his name and read and write to a very limited extent. There is evidence from plaintiffs that he could only sign his name with an “X” mark and could not read or write at all. However, plaintiffs’ own witnesses gave evidence which supports our view concerning Jack Alexander’s ability in this regard.
Darling M. Evans, Manager of the Production Credit Association in Tangipahoa Parish for thirty years, while testifying that Jack Alexander made his signature with an “X” and that he had never seen him read, also testified that it would be hard for him to answer whether Jack Alexander could read a will as others said he could read and write so he did not know. In other words, Mr. Evans entertained doubts on the subject and while he testified he made his signature with an “X,” some twenty-five exhibits are in the record bearing Jack Alexander’s signature.
Alexander Owens, another witness for plaintiffs, had known Jack Alexander for some twenty-four years, and was a witness to one of his marriages and was a member of the same church and lodge. While testifying that Jack Alexander could not read and write well enough to hold an office in the lodge, he also testified that he could read “short numbers, four, five or such as that” and further identified some writing of Jack Alexander’s in “The Farmer’s Account Book,” a book in which was kept the church financial records. This testimony is in keeping with the written statement he gave Sarah Alexander as *347 shown on exhibit P-5 that he could read very little.
Sarah Alexander, who was sick and suffering from the infirmities of old age and since the trial has died, also testified that her husband “could read a little bit and * * * write a little.” After plaintiffs’ counsel read the will to her, he asked her if Jack Alexander could have read the will and she answered, “Well, me and him — no * * * But he could read some but not that.” She also testified that Jack read the Bible to her and knew the scripture about John having to walk seventy-two miles to get baptized.
The defendant’s witness A. J. Evans, who had given one of the affidavits and who was described as “off kin” to Sarah Alexander, stated that he was well acquainted with Jack Alexander and he and Jack would study Mason books together. He stated that he himself could read fairly well but that Jack Alexander could not read as well as he could and that there were some things that neither of them understood. He did not know if Jack Alexander could read the will.
Newman Briggs, another defense witness who also gave one of the affidavits and was Sarah Alexander’s brother, stated that Jack Alexander could read some but not as well as he himself could but believed he could read the will. His affidavit stated that Jack Alexander visited in his home and that on several occasions Jack Alexander read the newspaper.
There are other witnesses who testified for plaintiffs that Jack Alexander could not read or write at all, and while we have noted the disinterested nature of this testimony, we do not accept it even though we would defend the proposition that it was truthfully given. Our review of the record satisfies us that the plaintiffs herein have failed to prove that Jack Alexander could not read or write and have further failed to prove that Sarah Williams Alexander knew Jack Alexander could not read or write, with the result that they have failed to sustain the heavy burden of proving that the summary judgment complained of was obtained through the fraudulent practice of Sarah Williams Alexander. As stated in Sanders v. Sanders, 222 La. 233, 62 So.2d 284, 286, 287 (1952):
“In the jurisprudence of this court it has been said that the charge of fraud is a most serious one; that one who alleges fraud has the burden of establishing it by legal and convincing evidence since fraud is never presumed, and that to establish the fraud exceptionally strong proof must be adduced. Strauss v. Insurance Co. of North America, 157 La. 661, 662, 102 So. 861; Garnier v. Aetna Ins. Co. of Hartford, Conn., 181 La. 426, 159 So. 705; Mutual Life Ins. Co. of New York v. Rachal, 184 La. 430, 166 So. 129; Metcalf v. Monsour, 195 La. 570, 197 So. 235; Mente & Co., Inc., v. Roane Sugars Inc., 199 La. 686, 6 So.2d 731; American Guaranty Co. v. Sunset Realty & Planting Co., Inc., 208 La. 772, 23 So.2d 409. It has also been said that evidence showing that the fraud was probable or that the circumstances partook of a suspicious character is not sufficient, and that the fraud must be established by proof stronger than the mere preponderance of the evidence. Angichiodo v. Cerami, D.C., 35 F.Supp. 359; Fort v. Metayer, 10 Mart. (O.S.) 436; Charrotte v. Louisiana College, 1 La.App. 438; Woodward v. Barringer, La.App., 24 So.2d 200.”
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.

. If the testator could neither read nor write, the testament is null and void in that it does not meet the requirements for a statutory will. The form of a statutory will is prescribed in LSA-R.S.
9:2443, which provides :
“ * * * those who know not how or are not able to sign their names, and those who know not how or are not able to read, cannot make dispositions in the form of the will provided for in R.S. 9:2442, nor be attesting witnesses thereto. * * * ”

. Court of Appeal, First Circuit, Docket No. 6683.

. LSA-C.C.P., art. 2004:
“A final judgment obtained by fraud or ill practices may be annulled.”

. See our opinion in Alexander v. Alexander, 196 So.2d 628 (1967).

. See note 2 supra and accompanying text.