State of Vermont

v.

Roger R. Rocheleau

[313 A.2d 33]

No. 177-71

Present: Barney, Smith, Keyser and Daley, JJ., and Billings, Supr. J.

Opinion Filed December 4, 1973

E. *Michael McGinn,* State's Attorney and *Robert E. Farrar,* Deputy State's Attorney, for the State.

*Kilburn & Lynch,* Swanton, for Defendant.

**Keyser, J.** The defendant was charged with unlawful possession of marijuana under 18 V.S.A. § 4224 (e) (2) (B) in District Court, Unit No. 3, Franklin Circuit. Trial by jury, at which defendant did not testify, resulted in his conviction and an appeal to this Court.

The defendant was arrested after a search of his motorcycle shop located on Lake Street in St. Albans by authority of a search warrant issued by the judge of the court upon

the affidavit of a state police officer. As a result of the raid the officers uncovered and took into their possession 17.1 pounds of marijuana.

At the time of the search several persons were present in the shop to whom *Miranda* warnings were given by the officers including the defendant. He was taken to the police station and again given the *Miranda* warnings. After waiving his rights in writing, the defendant signed his transcribed oral statements. Soon thereafter he returned to his shop accompanied by officers. He got a suitcase containing marijuana in the cellar and turned it over to one of the officers. He also gave them a small package of marijuana which was over a partition or door casing. One package contained 22.8 ounces of marijuana, the other one 3.6 grams.

Defendant's assignment of errors are to the (1) irregularity of the search warrant and suppression of evidence obtained in the search, (2) admissibility of defendant's written statement, (3) refusal of the court to order the state to give the name of the alleged confidential informant, (4) denial to testify solely on the question of his voluntariness in giving the statement, (5) argument of the state's attorney, (6) refusal of the court to submit to the jury the question of the voluntariness of his statement, and (7) disqualification of the judge to hear defendant's motion to suppress.

## Exception I

The defendant contends the admission into evidence of the marijuana seized at his premises was error. This is upon the ground that the search was illegal because the affidavit did not show that probable cause existed for the issuance of the warrant.

This Court, of course, must follow federal constitutional standards for the issuance of search warrants. *Mapp* v. *Ohio*, 367 U.S. 643 (1961); *State* v. *Stewart*, 129 Vt. 175, 180, 274 A.2d 500 (1971). Existence of probable cause supporting the search warrant is shown only when supported by oath or affirmation before the magistrate. *McCray* v. *Illinois*, 386 U.S. 300, 18 L.Ed.2d 62, 72 (1967).

This Court in *State* v. *Stewart*, *supra*, stated the test was

two pronged as defined in *Spinelli* v. *United States*, 393 U.S. 410, 21 L.Ed.2d 637, 89 S.Ct. 584 (1969), namely:

> One, the application must set forth sufficient underlying circumstances to enable the magistrate to make an independent judgment as to the validity of the information received by the applying officer. Second, there must be something in the application sustaining the credibility of the source of the information and the reliability of what is reported. The detail, precision and specificity of the informant's report may be taken in aid of all this.

In the instant case, as in most drug cases, an informant was involved. The affidavit states that marijuana was possessed at The International Motorcycle Shop of Vermont in the first floor and basement of the building at 44 Lake Street. The affidavit further states that the officer has probable cause to believe that the property to be searched for and seized is based on the following facts: "This confidential informant is known personally by this officer and has given information in the past . . . and found to be true. . . . This past experience has led this officer to believe that the information that was supplied this time is good and reliable and truthful." There is an inference from the language used that the officer's information came from an informant, but the affidavit does not say so or what the officer was told.

The meaning of "probable cause" is found in *Brinegar* v. *United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, 1890 (1948), where the Court stated:

> Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.

Defendant contends that no information was brought to the attention of the judge at the hearing to determine probable cause for the issuance of the search warrant except what was stated in the affidavit. The state argues in its brief without record citations, that "the affiant was put under oath

and oral testimony taken" and that "[t]he oral testimony coupled with all the documents constituted probable cause."

A magistrate may properly take testimony of an affiant in addition to that incorporated in the affidavit provided he makes a record of what those facts are and makes them a part of the affidavit; then the reviewing court is able to determine whether this evidence meets the test of probable cause. See e.g. Rule 41(c) of the Vermont Rules of Criminal Procedure, October 1, 1973.

We have diligently searched the transcript and find no evidence whatever as to the substance of the alleged oral testimony. At the time the motion to suppress was heard by the court, counsel made certain statements. But argument of counsel does not rise to the level of evidence, and we have only the evidence in the affidavit before us on the question of probable cause.

■■ It can only be concluded that there were insufficient facts before the judge who issued the warrant to enable him to make an independent judgment as to whether criminal activity was being carried on. This resulted from a lack of support for the conclusions stated in the affidavit. *Aguilar* v. *Texas,* 378 U.S. 108 (1964); *Spinelli* v. *United States, supra*; and *State* v. *Stewart, supra,* all make it clear that underlying factual data for the judicial officer's evaluation is a necessity.

In fact, the instant case and its required resolution, is perfectly documented in Mr. Justice White's concurrence in *Spinelli, supra,* at 424. The only difference between the two cases is the nature of the suspected criminal activity which, of course, is immaterial with respect to the legal issue involved. He said:

> Neither should the warrant issue if the officer states that there is gambling equipment in a particular apartment and that his information comes from an informant, named or unnamed, since the honesty of the informant and the basis for his report are unknown. Nor would the missing elements be completely supplied by the officer's oath that the informant has often furnished reliable information in the past. This attests to the honesty of the informant, but *Aguilar* v. *Texas, supra,* requires

something more—did the information come from observation, or did the informant in turn receive it from another?

■ While evidence of past reliability "attests to the honesty of the informant", it is not sufficient in and of itself to establish current reliability. "[T]he inquiry is, as it always must be in determining probable cause, whether the informant's *present* information is truthful or reliable. . . ." *United States* v. *Harris,* 403 U.S. 573, 581–82 (1971). If evidence of past reliability were alone sufficient, the paid, secret informant, who is regarded as a necessary evil in the combat against drug offenses, would be placed in elevated position compared to that of the ordinary citizen making his first complaint.

When the affidavit is judged with the foregoing considerations in mind, it clearly does not pass muster because it does not provide the requisite basis for the court's determination that probable cause existed for the issuance of the search warrant.

By reversing the conviction below, we are not imposing "technical requirements of elaborate specificity" on the drafting of affidavits in support of requests for search warrants, an imposition frowned upon by *United States* v. *Ventresca,* 380 U.S. 102, 108 (1965). Underlying facts and circumstances are a minimal requirement, for "[r]ecital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police." *Ventresca, supra,* at 109.

■ Since the search warrant was improperly issued, the conviction must be reversed and the marijuana seized in the initial search must be excluded should a new trial result. *Mapp* v. *Ohio, supra.*

The defendant further contends that the confession and the marijuana obtained after the confession should also be excluded since they are "fruits of the poisonous tree" under the test set out in *Wong Sun* v. *United States,* 371 U.S. 471 (1963).

The facts in *Wong Sun* v. *United States, supra,* giving rise to the "fruits of the poisonous tree" being applied show that

the statements which were excluded were made in response to federal narcotics agents' questioning following what the United States Supreme Court declared an arrest without reasonable grounds or probable cause. Id., 371 U.S. at 479. Mr. Toy, who had made the statements, was arrested by the agents at 6 a.m. after they had broken open Mr. Toy's door and followed him into his bedroom where his wife and child were sleeping. Following Mr. Toy's arrest, the agents immediately handcuffed him and began to question him. The Court held— "Under such circumstances it is unreasonable to infer that Toy's response was sufficiently an act of free will to purge the primary taint of the unlawful invasion." *Id.*, 371 U.S. at 486.

Three years subsequent to *Wong Sun* v. *United States, supra,* the United States Supreme Court prohibited the use of statements obtained during custodial interrogation as evidence in criminal proceedings without first informing the defendant subject to such interrogation of his rights under the Fifth and Sixth Amendments of the United States Constitution. *Miranda* v. *Arizona,* 384 U.S. 436 (1966). Under *Miranda,* Mr. Toy's statements would have been excluded simply because he had not been informed of those rights, thus negating any voluntariness as to the making of those statements. Without *Miranda,* the Court in *Wong Sun* condemned that custodial interrogation because of the gross violations of the Fourth Amendment of the United States Constitution by the federal narcotics agents.

Clearly, the conduct of the police officers in this case does not begin to approach the reprehensible conduct of the narcotics agents in *Wong Sun* v. *United States, supra.* The officers had in their possession at the time of the search what they obviously considered a validly obtained search warrant. The place where it was served was a place of business, not a private home. The search was made at 9:45 p.m., not an unreasonable time under the facts presented. Nevertheless, this search did not comply with the strictures of the Fourth Amendment of the United States Constitution and Article II of the Declaration of Rights of the Vermont Constitution, thus the evidence gained from that search cannot be utilized by the state in the criminal prosecution of the defendant.

Subsequent to that search, the defendant was twice informed of his rights required under *Miranda* v. *Arizona, supra.* The statements that the defendant made during the course of the custodial interrogation were determined by the trial court to be voluntary, and counsel had been waived by the defendant. The decision of the trial court that the defendant's statements were voluntary we find to be correct in law later in this opinion.

The defendant, however, cites *People* v. *Johnson,* 70 Cal.2d 541, 450 P.2d 865, 43 A.L.R.3d 366 (1969), *cert. denied,* 395 U.S. 969 (1969), for the premise that the giving of the *Miranda* warnings is not enough to remove the "fruit of the poisonous tree." There the defendant complained, among other things, that he was not specifically offered the immediate services of counsel. *Id.,* 450 P.2d at 874. In this case, however, the defendant, according to the testimony given at the hearing on the question of the voluntariness of his statements, was specifically informed that he had the right to talk to a lawyer before any questioning was done and that he could cease talking at any time during questioning and have the services of a lawyer. He was told this at the time of his arrest at his motorcycle shop and again at the police station.

In his dissent to *Miranda* v. *Arizona, supra,* Mr. Justice Harlan noted the requirement that the defendant be informed of his right to counsel and provided with such if requested prior to answering questions during custodial interrogation and complained of its impact on police investigation. He argued that the lawyer in the stationhouse "may become an obstacle to truth finding." *Id.,* 384 U.S. at 514. He further pointed out—"Any lawyer worth his salt will tell the suspect in no uncertain terms to make no statement to police under any circumstances." *Id.,* 384 U.S. at 516, n. 12.

▪ If the defendant had chosen to exercise his right to remain silent pending advice of counsel twice told him by police officers, Mr. Justice Harlan's complaints concerning the majority decision in *Miranda* v. *Arizona, supra,* undoubtedly would have been borne out. But the defendant made a voluntary, knowing and intelligent waiver of his *Miranda* rights and proceeded to make a statement and provide the officers with additional quantities of marijuana.

In the words of Mr. Justice Mosk in his dissent to *People* v. *Johnson, supra*:

> I cannot conceive of few more "independent act[s] by the defendant . . . which breaks the causal chain linking the illegality and [the] evidence" than advice by the captors to the suspect that he has a right to have counsel then and there, and that he may remain silent. Here we have *Miranda* warnings serving as the attenuation . . . not once, but twice. There was not merely a single break in the causal chain, but a double fracture. *Id.*, 450 P.2d at 878.

See also Annot., 43 A.L.R.3d 385, 402-04 (1972); 115 U. Pa. L. Rev. 1136 (1967).

The defendant has not here provided a factual situation requiring this Court to inject the "fruit of the poisonous tree" doctrine into this case because we do not find that the germ of the initial illegal search has so infected the defendant's subsequent confession and the seizure of the additional marijuana to require the cure of the exclusion of that evidence from the criminal proceedings.

■ The defendant also complains that the subsequent seizure of the additional quantities of marijuana was the product of a search to which he did not voluntarily consent. He claims that he did not make a valid waiver of his Fourth Amendment rights because he was not informed of his right to refuse to permit such seizure. However, the United States Supreme Court has recently held that knowledge of a right to refuse is not a prerequisite of a voluntary consent in Fourth Amendment circumstances. *Schneckolth* v. *Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 2051 (1973). It is one factor to be taken into account to determine whether such consent was voluntary in the totality of the circumstances. *Id.*, 93 S.Ct. at 2047–48. Unlike Mr. Bustamonte, the defendant in this case was informed of his right to counsel and to remain silent until he obtained assistance of counsel. He chose not to exercise this right and proceeded to knowingly, voluntarily and intelligently cooperate with the police officers and provide them with statements and evidence after he had waived his rights to remain silent and against self-incrimination. The

defendant provides this Court with no factual basis upon which to hold that his consent to the subsequent seizure to the additional quantities of marijuana was not voluntary.

We, therefore, hold that the admission of the defendant's statements and the additional quantities of marijuana obtained by police officers after the defendant made his statement into evidence in criminal proceedings against the defendant do not constitute error under the Constitutions of the United States and the State of Vermont.

## Exception II

The defendant claims that prior to giving his statement he advised the police that he did not want to answer any questions, but they persisted in their interrogation of him. This claim raises a factual question for the court on the issue of voluntariness of the statement.

The trial judge held a preliminary hearing, out of the presence of the jury, on the question of whether the statement was voluntarily given. A preliminary finding by the trial court on this issue is an essential safeguard to the constitutional protection asserted by the defendant's objection. *Jackson* v. *Denno*, 378 U.S. 368, 12 L.Ed.2d 908, 921, 84 S.Ct. 1774, 1 A.L.R.3d 1308 (1964).

At the voluntariness hearing Sergeant Brouillette of the St. Albans police force was a witness. He testified that while officers were asking questions the defendant "got up once and said he was not going to answer any more questions. He was directing his answers to other officers and not myself."

The defendant testified about questions by Officer Goodnow and his replies and that he told him, "I'm not going to answer any more questions." Later, he testified, "There was a time I got up and refused to answer questions."

The state's evidence clearly established that no threats, promises, or inducements were made to influence the defendant to make the statement, and that he was very cooperative. The defendant by his testimony attacked the voluntariness of his statement as testified to by the officers. His signature on the "Warning and Waiver" form and each page of the statement was not contradicted.

The defendant continued to answer questions by Officer Brouillette who later called in the stenographer for the police department to take a statement from the defendant.

The *Miranda* warnings were given to the defendant in his shop at the time of the search and again at the St. Albans police station. He did not ask for counsel at any time. At the police station he read and signed a "Warning and Waiver" form in the following language:

> I have been warned and have read the statement of my rights as shown above and I understand each of these rights and having those rights in mind, I am willing to answer questions and make a statement. I understand and know what I am doing and no promise or threats have been made to me and no pressure of any kind has been used against me.

The court in a clear-cut determination found that "the Respondent was fully aware and cognizant of his rights at that time; that the statement was voluntarily given; and that there was no undue influence or pressures put to him; and it may be admitted." When trial resumed before the jury the statement was marked, offered into evidence and admitted as State's Exhibit 25.

Unless it can be said as a matter of law that this decision on the preliminary question was wrong, it must stand. *State v. Goyet,* 120 Vt. 12, 36, 132 A.2d 623 (1957).

 The weight and sufficiency of the evidence as well as the credibility of the witnesses and the persuasive effect of their testimony was for the court on the issue of voluntariness. The determination of the court must stand if supported by credible evidence, although there may be inconsistencies or even substantial evidence to the contrary. *Anderson* v. *Knapp,* 126 Vt. 129, 134, 225 A.2d 72 (1966).

The record does not sustain defendant's assertion that his statement was obtained because of a persistent interrogation of him. There was no evidence to indicate to the trial judge that the admissions contained in the statement were wrung out of the accused against his will. In fact the statement itself states that it was given "willingly and voluntarily" without "promises or threats having been made to me."

We are not persuaded to hold, as a matter of law, that the ruling of the court made at the conclusion of the preliminary hearing was error. This exception is without merit.

### Exception III

During trial defendant moved "for the name of the informant." He argued that as the informant was in the shop he was a material witness, and his identity would enable him to meet his accusers.

There was no testimony that the informant was in the shop at the time of the raid, or that he was an accuser, or that he was, or would be, a material witness.

The privilege against disclosure involves public policy and effective law enforcement. It is strengthened if the state does not, as here, rely on the informant in proving its case and does not use information obtained from the informant as evidence of guilt. See Annot., 76 A.L.R.2d 262 (1961).

The defendant was apparently speculating that the informant might be helpful to his case, but this is never enough to warrant disclosure. Gill v. State, 11 Md. App. 593, 275 A.2d 505, 507 (1971). The burden was upon the defendant seeking disclosure of evidence that the informant's identity is necessary and relevant to a fair trial. Id. See McCray v. Illinois, supra, where the court recites the reasons for testimonial privileges and held, at 72, that the failure of the state to produce an informant to testify against the accused does not unconstitutionally deprive the accused of his right to confront a witness against him.

This exception is without merit.

### Exception IV

The defendant claims error for the reason that the court ruled that he could not testify in his defense solely to the circumstances surrounding the giving of his written statement to the police without being subjected to unrestricted cross-examination. The ruling was proper.

The court said in McGautha v. California, 402 U.S. 183, 215, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), as follows:

It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination. See, e.g., *Brown* v. *Walker*, 161 U.S. 591, 597–98 (1896); *Fitzpatrick* v. *United States*, 178 U.S. 304, 314–316 (1900); *Brown* v. *United States*, 356 U.S. 148 (1958).

See also 8 J. Wigmore, Evidence § 2276 (b) (2) (J. McNaughton Rev. 1961); 2 F. Wharton, Criminal Evidence §§ 445, 446 (13th ed. C. Torcia 1972).

The ruling was without error.

## Exception V

During his summation the state's attorney made four statements which defendant argues were prejudicial. These referred to "unrebutted evidence" or "unrebutted testimony." Defendant did not object to any of these statements.

In the state's attorney's rebuttal argument, he stated: "The police officers were testifying about Mr. Rocheleau, and I have to hammer on the point again, this testimony of these officers and the expert witnesses and this statement are unrebutted evidence. . . ."

Mr. Lynch interrupted saying: "I object to that Your Honor." The court replied: "Mr. Lynch, this is argument and it will be for the jury to evaluate the evidence." By its ruling the court impliedly approved the propriety of the argument.

The defendant did not testify and any comment by the court or prosecutor on the accused's failure to testify is prohibited by 13 V.S.A. § 6601. The state's attorney did not make any direct comment relative to defendant's failure to take the stand. But, it might be said there was the possible inference from his argument that he was calling this fact to the attention of the jury.

Since the case is to be remanded we need not decide whether the argument was prejudicial. However, in the posture of this case with no evidence presented in defendant's defense and the defendant not having taken the stand, the argument could well be understood to emphasize to the jury

the fact that defendant did not testify. At least, it was improper and impermissible comment by the state's attorney.

## Exception VI

Defendant asserts the court erred in not charging the jury as requested that the state must prove beyond a reasonable doubt that the defendant's statement was voluntarily given.

As we have noted, the defendant did not testify when trial resumed before the jury. At the close of the state's case he rested without producing any evidence in his defense. The state's evidence clearly demonstrated that no promises, threats or inducements were made in connection with defendant's statement, or that it was not voluntarily given. The defendant did not choose to challenge the voluntariness of his statement at trial, even though the court had ruled the statement was admissible at the preliminary hearing. See Commonwealth v. Cannon, — Pa. —, 309 A.2d 384, 390 (1973). In this posture of the case there was no factual issue of voluntariness presented for resolution by the jury.

Viewed in this context, the court properly did not submit the issue of voluntariness to the jury for its determination and the court's refusal to charge as defendant requested was without error. See Lego v. Twomey, 404 U.S. 477, 489–90 (1972).

## Exception VII

Defendant moved that trial by jury be before a presiding judge other than Judge Gregg, the regularly assigned judge of the court, because he had issued the search warrant and had already decided the issues raised against the defendant. The motion was denied and, on renewal of the motion just before trial began, was again denied.

Like a motion claiming misconduct of jurors, this motion was addressed to the trial court's discretion and requires a determination of issues of fact. The defendant had the burden of establishing the essential facts by adequate and competent proof, either by oral testimony or supporting affidavit. State v. Bogie, 125 Vt. 414, 418, 217 A.2d 51 (1965).

The record is entirely void of any such proof and the ruling was correct.

*Judgment reversed and cause remanded.*