## State of Vermont v. Ray William Harbaugh, Jr.

[326 A.2d 821]

No. 26-73

Present: **Barney, C.J., Smith, Daley and Larrow, JJ., and Shangraw, C.J. (Ret.)**

Opinion Filed October 1, 1974

570

*M. Jerome Diamond,* State's Attorney, and *James M. Ruschell,* Deputy State's Attorney, for the State.

*Warren B. Rudman,* Attorney General, and *David W. Hess,* Assistant Attorney General, for the State of New Hampshire, *amicus curiae.*

*Robert Edward West,* Defender General, and *George E. Rice, Jr.,* Deputy Defender General and *David A. Gibson, Esq.,* Brattleboro, for Defendant.

Larrow, J. Respondent Harbaugh was convicted by jury trial in the District Court of Vermont, Unit No. 6, Windham Circuit, on two informations charging burglary in the nighttime

and grand larceny. He seeks here, without protestation of innocence, a ruling that certain evidence against him, including a confession, should have been excluded below under the exclusionary rules rooted in *Silverthorne Lumber Co.* v. *United States,* 251 U.S. 385 (1926), and *Wong Sun* v. *United States,* 371 U.S. 471 (1963). He would, in short, have us rule that "the criminal is to go free because the constable has blundered." *Cf.* Cardozo, J., in *People* v. *Defore,* 242 N.Y. 13, 150 N.E. 585 (1926). A unique feature of this case is that the constables in question are New Hampshire police officers, acting there under a New Hampshire statute.

Respondent also questions the charge given by the court as to the voluntariness of his confession, and a failure to charge thereon pursuant to his timely requests.

The facts pertinent to the issues here raised are largely undisputed. Respondent testified below at the pre-trial hearing on his motions to suppress evidence and to suppress his confession, but did not testify at the trial itself. The court denied his motions to suppress, and at trial his motions to exclude, on evidence reasonably tending to establish the sequence of events which follows.

Respondent, driving his car with three other passengers therein, was stopped at about 3:05 A.M., November 6, 1972, in Keene, New Hampshire, by Officer Saari of the Keene police force. The initial stop was occasioned by a defective taillight, since there had been a reported accident involving a car of similar description earlier in the evening. As the officer approached the car, he detected a smell of marijuana. Upon request, all of the occupants but one produced identification, along with respondent's auto registration and driver's license. While Officer Saari was making out his "check slip" Sgt. Robinson arrived at the scene, noticed the rear of the car was sitting low, and asked to look into the trunk. At first respondent Harbaugh had no objection, but a screwdriver was sent for because the lock was broken. While waiting for the screwdriver to arrive, Sgt. Robinson talked with the occupants, and noticed discrepancies in their stories about where they had been and what they had been doing.

When the screwdriver arrived, respondent changed his mind, and refused permission to open the trunk. Sgt. Robinson then told him they would either do it there or go to

the station for a warrant. During this period, the respondent informed the Sergeant, untruthfully as it developed, that he was under indictment for burglary in Rhode Island. Officer Saari gave respondent a "defective equipment tag," which was not a court summons or the basis for custodial arrest.

Sergeant Robinson then directed respondent to drive to the police station, which he did. The reason for this, according to the Sergeant, was because he thought the vehicle might have come from Canada with a quantity of drugs, or might contain evidence of a burglary. The four occupants were not arrested on any formal charges, but were held under the New Hampshire detention statute (N.H., R.S.A. 594:2) hereinafter treated.

At the police station, an inventory was taken of personal possessions. Based upon large amounts of change in coins, several hundred-dollar bills, two one-dollar bills with pin holes in the edges indicating they might have been a merchant's "first dollars", plus wet shoes and pants, Detective Fish decided to apply for a search warrant for the car. The supporting affidavit outlined the matters above set out, plus seeing a large number of coins on the floor and seat of the car, learning all four occupants had prior criminal records for breaking and entering, and attachment of the number plate with wire so as to be easily removed. The smell of marijuana was not mentioned in the affidavit.

The search warrant was secured and executed shortly before 7:00 A.M., just within the period of the New Hampshire four hour detention statute. In the trunk were found various articles stolen earlier that evening from the Cobb and Harmon garage in Brattleboro, burglar tools, and some checks matching stubs left at the scene of the burglary. Up to that point, the Keene police were unaware of the actual burglary. They then contacted the Brattleboro police, and arrested respondent for possession of burglar tools. He was arraigned in New Hampshire that morning, and questioned later in the day by Brattleboro officers, about 3:00 P.M.

Before questioning the respondent, the Brattleboro officers gave him the *Miranda* warnings, except that (a) he was advised "you cannot be compelled to answer and you have the right to refuse to answer any questions while you are in custody" instead of being specifically advised that he had

the right to remain silent, (b) he was advised that he was entitled to talk to a lawyer before answering any questions, but not advised he was entitled to talk to a lawyer before any questions were asked, and (c) he was not advised that, if he decided to commence answering any questions, he could stop at any time.

After being advised under *Miranda*, with the exceptions set forth above, and upon being confronted with the check stubs found in his trunk and bearing the name and address of the burglarized garage, respondent knowingly and intelligently waived his rights, and gave the Brattleboro officers a full confession. Respondent in connection with other offenses, had been given *Miranda* warnings on two prior occasions.

## Questions Presented

The questions involved in this appeal are not crisply presented by the parties, perhaps because of the state of flux involving these issues at the present time. Respondent notes three issues, and later briefs a fourth. The State notes six issues. By leave of court, the Attorney-General of New Hampshire has presented an *amicus* brief dealing with the New Hampshire detention statute, which we have found helpful. We analyze the claims of error presented to be substantially as follows:

1. Because of the unconstitutionality of the New Hampshire detention statute, the evidence secured during respondent's detention should have been suppressed, as well as the evidence garnered under the search warrant obtained as a result of that detention, under the general "poisoned tree" exclusionary rules tracing back to *Silverthorne, supra,* and *Wong Sun, supra.*

2. Defendant's confession, obtained as the direct result of illegally obtained evidence, should have been excluded for the same general reasons.

3. Defendant's confession should also have been excluded as involuntary, because the warnings, as given, did not comply with the prophylactic requirements of *Miranda* v. *Arizona,* 384 U.S. 436 (1966).

4. The trial court erred in refusing to submit the voluntariness of respondent's confession to the jury, as requested.

■ The New Hampshire statute here in question is Revised Statutes Annotated 594:2. In substance, it permits a peace officer to stop any person abroad whom he has reason to suspect has committed or is about to commit a crime, and to demand of him his name, address, business abroad and destination. If the person so stopped fails to identify himself and explain his actions to the satisfaction of the officer, he may be detained and further questioned and investigated. The total detention is not to exceed four hours, shall not constitute an arrest or be officially recorded as such, and at the end of the period the person detained shall be released unless arrested and charged with a crime.

Both the State, and New Hampshire, as *amicus,* question the propriety of our passing upon the constitutionality of the New Hampshire statute. A novel question is presented, and we are cited to no decisions determinative of our right to make such a determination. We are, in any event, reluctant to pass upon constitutional questions not necessary for a determination of the case presented. *State* v. *Mecier,* 126 Vt. 260, 227 A.2d 298 (1967). Since, in our view, resolution of this issue is not required, we can accord the New Hampshire statute no less cavalier a treatment than our own.

We think that the controlling issue here is not the constitutionality of the New Hampshire statute, as such, but the question of whether or not the Keene officers acted in good faith reliance upon its validity. Upon the record presented, we feel it a necessary conclusion that they did so act. While there is no square-cut decision upholding the validity of this statute, it has been litigated, without any holding that it is invalid. *Hancock* v. *Nelson,* 363 F.2d 249 (1st Cir. 1966), *cert. denied,* 386 U.S. 984 (1967). So has a similar Rhode Island statute. *Lim* v. *Andruskiewicz,* 360 F.Supp. 1077 (D.R.I. 1973). The similar Rhode Island statute has been also expressly upheld. *Kavanagh* v. *Stenhouse,* 93 R.I. 252, 174 A.2d 560 (1964). And, even absent a statute, a reasonable detention for questioning has been held not to be arrest, where the purpose is truly investigatory, and the police have good reason to believe a person must be questioned further to determine whether he or any other person must be arrested.

*United States* v. *Vita,* 294 F.2d 524 (2d Cir. 1961); *People* v. *Morales,* 22 N.Y.2d 55, 238 N.E.2d 307 (1968).

The United States Court of Appeals for the 5th Circuit has twice reached a similar conclusion under an unconstitutional vagrancy statute somewhat similar to the statute here in question. Even though the statute was invalid, evidence and a confession (of a different crime) obtained as a result of an arrest under the statute, were held admissible, absent a showing that the police lacked a good faith belief in the validity of the statute when they acted under it. The deterrent purpose of the exclusionary rule, later more carefully delineated in *Michigan* v. *Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), was held not to be served by barring evidence obtained, without coercion, under incarceration for violation of a statute considered valid at time of arrest. *United States* v. *Kilgen,* 445 F.2d 287 (5th Cir. 1971); *Hamrick* v. *Wainwright,* 465 F.2d 940 (5th Cir. 1972).

Two recent decisions of the United States Supreme Court seem to us also to sustain our refusal to apply the "poisoned tree" doctrine to evidence obtained under the New Hampshire statute. As indicated, we do not think the tree was "poisoned" where the officers acted in good faith reliance upon its validity. But, even if it were, the exclusionary rule the doctrine embodies is predicated upon a postulated deterrent effect. In holding that testimony obtained from a third person through questioning of the defendant conducted without full compliance with *Miranda,* is admissible in the absence of wilful or negligent conduct by the police, the Court said:

> By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care towards the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.

*Michigan* v. *Tucker, supra,* 94 S.Ct. at 2365, 41 L.Ed.2d at 194.

We cannot refrain from commenting that, whatever the deterrent effect of this Court's pronouncements upon Vermont police, its fall-out consequences in New Hampshire would most certainly be minimal.

Our conclusion is further supported, we feel, by the holding and reasoning of *United States* v. *Calandra,* 414 U.S. 338 (1974). Therein also the primary purpose of the "poisoned tree" exclusionary rule, deterrence of future unlawful police conduct, was also emphasized, and the Court held that extending the rule to exclude illegally obtained evidence from a grand jury would "not significantly further the goal of deterrence." By analogy, using such evidence to procure a search warrant is also permissible, since both the indictment and the warrant have as their primary purpose a finding of probable cause.

We therefore hold that the evidence introduced against the respondent, apart from his confession, obtained either (a) during his detention prior to formal arrest, and used as a basis for the search warrant, or (b) obtained as a result of executing the search warrant, was properly admitted and its suppression correctly denied. While we do not herein attempt to completely delineate the boundaries of the "poisoned tree" rule, we are convinced that it does not reach so far as respondent here contends. Apart from the very dubious deterrent effect in New Hampshire of any holding we might here make, as we have noted, the "reprehensible conduct" of the narcotics agents in *Wong Sun* does not appear. *State* v. *Rocheleau,* 131 Vt. 563, 313 A.2d 33 (1973). And even if it did, they were in no particular agents of Vermont, the prosecuting state.

## Admission of Respondent's Confession

As the Court was careful to point out in *Michigan* v. *Tucker, supra,* it does not necessarily follow that the inapplicability of the "poisoned tree" doctrine makes a confession admissible. That doctrine springs from the Fourth Amendment prohibition of unreasonable search and seizure, but a confession must also be judged under the Fifth Amendment protection against self-incrimination other than voluntary.

A careful review of the transcript in this matter convinces us that the confession used on trial was voluntarily given. Since the matter here involved is the admissibility of evidence rather than proof of an essential element of the crime, the measure of proof required is not proof beyond a reasonable

doubt, but proof by a preponderance of the evidence. *Lego* v. *Twomey*, 404 U.S. 477 (1972). Although the trial judge made no specific findings, which would have been a preferable procedure, it is clear from the evidence that the required standard was amply met.

Apart from the considerations taken up in the preceding section of this opinion, we are also of the opinion that the lapse of time here involved, some eight hours, before the giving of the confession to an entirely different set of officers, from another state, plus the giving of additional warnings, would be sufficient to "attenuate the taint" of the "poisoned tree", even were this doctrine otherwise applicable. *Wong Sun* v. *United States, supra.*

Respondent further urges, however, that his confession should have been excluded because the warning requirements of *Miranda* were not literally complied with. This, too, is a subject carefully discussed in *Michigan* v. *Tucker, supra.* That opinion, as we read it, reaches the common-sense result that the warning standards spelled out in *Miranda* are "prophylactic standards" not intended to be a "constitutional straitjacket", and that where there is substantial, but not literal, compliance with the prescribed wording, statements otherwise voluntarily given under former case law standards are not rendered inadmissible. *Accord, United States* v. *Lamie,* 429 F.2d 373 (2d Cir. 1970); *Green* v. *State,* 45 Ala. App. 549, 233 So.2d 343 (1970); *People* v. *Landgham,* 257 N.E.2d 484 (Ill. App. 1970).

We hold, in light of the foregoing decisions, that the warning given by the Brattleboro police, including the advice that respondent had the right to refuse to answer any questions asked of him while in custody and to talk to an attorney before answering, coupled with the respondent's own admission that he had received the *Miranda* warnings, and waived his rights thereunder, at least twice shortly before these proceedings, constitute substantial compliance with *Miranda* as to warning, and a showing of knowing, voluntary and intelligent waiver of his rights which is prerequisite to admission of his oral confession in evidence. The right to remain silent was substantially conveyed. *United States* v. *Lamie, supra; People* v. *Landgham, supra.* The right to stop answering at any time need not be included in the original

warning, so long as it is observed upon specific request. *Green v. State, supra; Katzensky v. State,* 183 S.E.2d 749 (Ga. 1971). We do not read *Miranda,* as respondent would have us, as requiring notice of a right to talk to an attorney before any questions are *asked,* rather than answered.

### Exceptions to the Charge

The respondent seasonably filed written requests to charge, which, in substance, would have instructed the jury to pass upon the issues of whether the oral confession had been voluntarily given, after proper *Miranda* warnings and knowing and intelligent waiver of his constitutional rights. This the Court refused to do, and with respect to the confession gave only the standard charges relating to out-of-court statements of a party. The jury was simply told to determine whether the statement was made, and, if it was, the factors to be determined in assessing its credibility. Both parties discuss *Jackson v. Denno,* 378 U.S. 368 (1964), and *Sims v. Georgia,* 385 U.S. 538 (1967), as determinative of the issue presented. These decisions are, of course, binding upon this Court, but we do not consider that they resolve the issue.

As we read *Jackson* and *Sims,* two courses of procedure are constitutionally permissible. One is that followed by the trial court, sometimes called the "orthodox" rule. Under this rule, the court's preliminary determination that the confession was voluntary and admissible is a final determination, and nothing remains for jury determination. The second is the so-called "Massachusetts rule", under which the court rules on admissibility, but submits to the jury for final determination the question of voluntariness. The State flatly asserts in its brief that Vermont's procedure is the orthodox rule. It cites no cases for this conclusion, and we know of none which support it.

In *State v. Rocheleau, supra,* we held that the issue need not be presented to the jury where no factual question has been raised by the evidence. That is not, however, the point which is raised here. Although the respondent did not himself testify, a majority feel that cross-examination and the short testimony of one witness, did create a factual issue calling for determination.

We judicially notice that, both before and after *Jackson,* the trial courts of the State, in general, have followed the "Massachusetts rule" and submitted the issue of voluntariness, where raised, to the jury under appropriate instruction. As far as we can determine, this issue has never been squarely presented to this Court. Now that it is, we feel that the so-called "orthodox" rule contains aspects of harshness inconsistent with the general administration of criminal law in this jurisdiction. It attaches to the preliminary determination of the court an aura of infallibility which, while it may be consistent with the requirements of the constitution, is not consistent with the general concepts of the right to jury trial.

■ While some of the requests to charge were not fully justified, the general refusal to submit the issue of voluntariness to the jury, and charging them only with respect to credibility, are prejudicial error, requiring reversal.

### Reduction of Sentence

■ There has been no appeal in this case by the State, but it appears from the transcript that about five weeks after the imposition of sentence in these cases, and after the filing of notice of appeal passing them to this court, the trial court, with the apparent acquiesence of the state's attorney, held a short hearing and reduced the respondent's sentence. This appears to have been done to permit quicker extradition of the respondent to Massachusetts.

While this issue is not here presented or briefed, and almost certainly never will be done with consent of the parties, this court does not sit in a vacuum. We judicially notice that the same, or similar, procedure has been several times followed in the trial courts. We therefore take occasion to comment on this question, since it appears that respondent has long since been released from custody and returned to Massachusetts, so that the prospects of re-trial on these informations is extremely remote. *In re Shequin,* 131 Vt. 111, 300 A.2d 536 (1973), clearly sets forth the applicable law. There is no power in a trial court to modify a sentence once its execution is begun, unless the sentence was somehow invalid or improperly imposed. That the sentencing court, or some successor, may come to the conclusion that the sentence

was "inappropriate" is not enough. Nor does such a conclusion justify reduction under post-conviction relief provisions of the statute. We have no legislative provision for review of sentences generally for hindsight or inappropriateness. And to attempt to imply one as part of a court's general powers runs expressly contrary to statute, to case law, and renders practically nugatory all statutory provisions relating to parole and conditional pardon. The sentencing court is not a parole board; it does not retain perpetual jurisdiction of cases brought before it. Absent invalidity or clerical error, it cannot alter imposed sentences as a matter of discretion, or set them aside in the absence of grounds for new trial.

*Judgments reversed and causes remanded.*

**Daley, J.** (in dissent) My disagreement with the majority lies solely with their statement that the evidence presented a factual issue upon the question of the voluntariness or involuntariness of the defendant's confession. My review of the evidence leads me to the opposite conclusion. I believe the evidence surrounding the taking of the confession was not conflicting and presented no factual issue. I cannot find any evidence or legitimate inference to be drawn therefrom giving rise to any inference in law or fact that the confession was other than voluntary or the product of coercion, inducement, fear, promise of benefit, or any other unlawful activity on the part of the police officers.

In the absence of a factual issue for the jury determination, the trial court was correct in not submitting the issue, and its refusal to charge as requested by the defendant was without error. See *State* v. *Rocheleau,* 131 Vt. 563, 577, 313 A.2d 33 (1973). I would affirm.

**Shangraw, C.J. (Ret.)** (dissenting) I concur with the contents of Justice Daley's dissent for the reasons therein stated.

Furthermore, the majority opinion, in my judgment, fails to demonstrate or reveal facts giving rise to a factual issue for resolution by the jury.

I would affirm.